Eric K. Yaeckel [CSB No. 274608]
yaeckel@sullivanlawgroupapc.com
Ryan T. Kuhn [CSB No. 324538]
ryan@sullivanlawgroupapc.com
SULLIVAN & YAECKEL LAW GROUP, APC
2330 Third Avenue
San Diego, California 92101
phone: (619) 702-6760 | fax: (619) 702-6761

Derik N. Lewis (SBN 219981)
dlewis@VantisLaw.com
VANTIS LAW FIRM, APC
120 Vantis Drive, Suite 300
Aliso Viejo, California 92656
phone: (949) 216-0935 | fax: (949) 296-0935

Attorneys for Plaintiff ALICE HSU

## IN THE UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALICE HSU, individually and on behalf of other members of the public similarly situated;<br><br>        Plaintiff,<br><br>   vs.<br><br>SERVIS ONE, INC., a Delaware corporation, d/b/a BSI FINANCIAL SERVICES; ENTRA DEFAULT SOLUTIONS LLC, a Texas limited liability company; and DOES 1 through 50, Inclusive,<br><br>        Defendants. | Case No.<br><br>**COMPLAINT FOR:**<br><br>1) VIOLATIONS OF REGULATION X OF THE REAL ESTATE SETTLEMENT PROCEDURES ACT<br>2) VIOLATIONS OF CALIFORNIA'S HOMEOWNER BILL OF RIGHTS (SERVICER)<br>3) VIOLATIONS OF CALIFORNIA'S HOMEOWNER BILL OF RIGHTS (TRUSTEE)<br>4) VIOLATIONS OF THE FEDERAL FAIR DEBT COLLECTION PRACTICES ACT<br>5) VIOLATIONS OF THE CALIFORNIA ROSENTHAL ACT<br>6) NEGLIGENT LOAN SERVICING |

1

7) UNFAIR PRACTICES UNDER CALIFORNIA BUSINESS & PROFESSIONS CODE SECTION 17200, ET SEQ.

8) DECLARATORY RELIEF

(DEMAND FOR JURY TRIAL)

Plaintiff ALICE HSU (*"Plaintiff"*), individually and on behalf of other members of the public similarly situated, brings this complaint against the above-named Defendants (*"Defendants"*), and DOES 1 through 50 inclusive, and each of them, and alleges as follows:

## THE PARTIES

1.      Plaintiff is and was at all times material hereto an individual residing in Los Angeles County, California. Plaintiff owns the residential real property commonly known as 1224 S California Street, San Gabriel, California 91776 (the *"Property"*) and have at all relevant times occupied that property as Plaintiff's principal residence.

2.      Plaintiff is informed and believes and based thereon alleges that Defendant SERVIS ONE, INC., a Delaware corporation, d/b/a BSI FINANCIAL SERVICES (*"BSI"* or *"Servicer"*) is and at all times relevant herein was, a corporation organized and existing in the State of Delaware, and at all times relevant herein was actively engaged in the business of making, arranging, holding and/or servicing loans, in Los Angeles County, California and/or involving real properties located in Los Angeles County, California.

3.      Plaintiff is informed and believes and based thereon alleges that Servicer conducted within the most recent regulatory reporting period, more than 175 foreclosures on residential real properties of four or fewer dwellings located in California.

**CLASS ACTION COMPLAINT**

4.    Plaintiff is informed and believes and based thereon alleges that Servicer and its affiliates service more than 5,000 mortgage loans.

5.    Plaintiff is informed and believes and based thereon alleges that Defendant ENTRA DEFAULT SOLUTIONS, LLC (*"Trustee"*) is, and at all times relevant herein was a limited liability company organized and existing in the State of Texas, actively engaged in the business of acting as a trustee under deeds of trust secured by real property in Los Angeles County, California and/or involving real properties located in Los Angeles County, California.

6.    Plaintiff is informed and believes and thereon alleges that Defendants are subject to the terms of the Real Estate Settlement Procedures Act ("RESPA"), codified as Title 12, Chapter 27 of the United States Code, 12 U.S.C. §§ 2601–2617, as further set forth herein.

7.    RESPA specifically authorizes an action to be brought "in the United States district court or in any other court of competent jurisdiction, for the district in which the property involved is located, or where the violation is alleged to have occurred." 12 U.S.C.A. § 2614 (2001). Federal Question Jurisdiction is also proper for Plaintiff's RESPA claims based upon 28 U.S.C. § 1331.

8.    The true names and capacities, whether individual, corporate, associate or otherwise, of the defendants named herein as DOES 1 through 50, inclusive, are unknown to Plaintiff at this time, and DOES 1 through 50 are therefore sued by such fictitious names. Plaintiff will, with leave of court if required, amend this complaint to set forth the true names and capacities of such fictitiously-named defendants when the same have been ascertained. Plaintiff is informed and believes and based thereon alleges that each such fictitiously-named defendant is responsible in some manner for the acts and occurrences hereinafter alleged.

9.    Plaintiff is informed and believes and based thereon alleges that, at all times herein mentioned, each of the Defendants, including the DOE Defendants, was the agent, servant, officer, representative, employee and/or alter-ego of each of the

**CLASS ACTION COMPLAINT**

remaining Defendants and was at all times acting within the course and scope of such relationship, or was in some way the cause of Plaintiff's harm and injury.

10.    BSI, Trustee, and DOES 1-50 are collectively referred to herein as ***"Defendants."***

## MORTGAGE SERVICING BACKGROUND

11.    The residential mortgage market is the largest market for consumer financial products in the United States with over $10 trillion in loans outstanding. Mortgage servicers play a critical role in the mortgage market, manning the front lines in the day-to-day management of mortgage loans for banks, lenders and investors. The majority of mortgage loans serviced by mortgage servicers are owned by investors of securitized loans.

12.    Servicers are responsible for sending monthly mortgage statements, collecting and distributing mortgage payments, maintaining and disbursing funds from escrow accounts for payment of insurance and property taxes, reporting to creditors and investors, and interacting with borrowers regarding servicing questions and concerns.

13.    Servicers are also specifically responsible for administering collection efforts after a borrower default and pursuing foreclosure, as well as overseeing and implementing loss mitigation programs and foreclosure preventions options to assist borrowers in avoiding default, delinquency and foreclosure.

14.    Mortgage servicing can be performed by banks or non-bank entities depending on the mortgage product and business model. Some lenders make loans and conduct all the servicing on those loans. Other lenders will sell their interest in the mortgage loans but retain the servicing rights to collect the fees as a servicing business. In other cases, mortgage servicers have no role in loan origination or ownership at all and simply service mortgages for third-party lenders. These third-party mortgage servicers are hired to either service mortgages in a lender's portfolio, or they can purchase the mortgage servicing rights on securitized loans.

**CLASS ACTION COMPLAINT**

15.    The rights of the mortgage servicer and the owner of the mortgage are contained in written servicing agreements between the parties. These servicing contracts may specify the circumstances under which a mortgage servicer may offer loan modifications to borrowers. However, these servicing contracts are subject to state and federal laws, rules and regulations regarding mortgage servicing and loss mitigation processing.

16.    Compensation models for mortgage servicing may vary, but servicers generally recoup their investment in purchasing servicing rights and earn a profit through the following: (i) a net servicing fee, which is usually expressed as a constant rate assessed on unpaid mortgage balances; (ii) interest float on escrow accounts prior to disbursement; (iii) charging and collecting fees allowed under the mortgage documents or for administrative functions such as responding to borrower requests, and (iv) marketing other products and services to borrowers.

17.    Under this compensation model, servicers are effectively compensated for functioning as collectors and processors with little attention to customer service or borrower satisfaction. Furthermore, borrowers have no ability to select or change servicers and therefore have little sway in the functions or service levels of these servicers. Servicers simply compete for business by offering loan owners lower pricing on the servicing performed and, in doing so, reduce the available financial resources to allocate toward borrower satisfaction and regulatory compliance.

18.    Intensifying the divide between a servicer's motivation for profits and the borrower's desire for better service is the often-unknown fact that servicers earn additional revenue from various fees assessed on borrowers such as late fees and administrative functions like providing payoff statements, processing direct payments and other borrower-initiated services. Therefore, servicers have an incentive to seek out opportunities to impose fees on the borrower.

19.    The inherent conflicts of interest and extreme pressure related to higher volumes and lower pricing in the mortgage servicing industry came to a head when

the real estate market imploded in 2007-2008. After the 2007-2008 global financial crisis, and during the resulting Great Recession, the number of mortgage defaults in the United States surged to historic levels. Servicers were unable to handle the eruption of delinquent loans, mortgage modification requests, and foreclosures. Delinquency rates nearly doubled from 2007 to 2010 and servicers had inadequate procedures and infrastructure to handle the upturn. Mortgage servicers were flooded with loss mitigation requests from struggling borrowers.

### **LOSS MITIGATION DURING THE GREAT RECESSION**

20.    A loss mitigation request is a plea for help from a borrower in financial difficulty who needs accommodation on his or her mortgage to avoid delinquency, default and/or foreclosure. Loss mitigation can take various forms ranging from temporary forbearance to more permanent changes in the interest rate, loan balance or length of repayment, all with the intent of allowing the borrower to retain ownership of their home. In situations where the borrower is no longer able to afford the home, loss mitigation can still assist in avoiding a punishing foreclosure by pursuing a short sale or deed-in-lieu of foreclosure.

21.    Servicers lacked the experience and manpower to adequately address the surge of mortgage defaults and resulting tsunami of loss mitigation requests. The industry-wide deficiencies of mortgage servicers resulted in a number of enforcement actions by federal and state regulators. The failures in mortgage servicing led to various problems for borrowers. Borrowers were unable to obtain information about loss mitigation programs and foreclosure avoidance options. Servicers were unable to process applications for loss mitigation in a timely manner and homeowners ended up in foreclosure and losing their homes by the thousands. Many times, foreclosure proceedings were commenced without proper documentation and without adequate resources to administer the foreclosure process. Servicers also failed to sufficiently oversee third-parties handling foreclosure- related services.

22.     Caving into the pressure to process more and more foreclosures, the nation's largest servicers instituted a practice now known as "Robo-signing" whereby servicers improperly had employees sign foreclosure filings en masse to speed up the processing without knowing if those documents were correct. In February 2012, the federal government, 49 state attorneys general and the District of Columbia, entered into the largest consumer financial protection settlement in U.S. history with what were then the nation's five largest mortgage servicers. This "National Mortgage Settlement" provided over $50 billion in relief to distressed borrowers harmed by the wrongful foreclosures and direct payments to the states and the federal government. Similar settlements and consent orders with State and Federal regulators were later made with many other servicers (including Defendant BSI Mortgage Servicing in 2018).

23.     The Federal government also instituted programs like the Home Affordable Modification Program (HAMP), which provided eligible borrowers with an opportunity to modify their mortgage loans to make them more affordable. Servicers were eligible for incentive payments for participating in HAMP.

24.     Despite these enforcement actions and incentive programs, state and federal regulators were still concerned that the mortgage servicing industry was not adequately looking out for the rights of borrowers facing financial difficulties.

## <u>REGULATION X OF RESPA</u>

25.     The Real Estate Settlement Procedures Act of 1974 (***"RESPA"***) was originally enacted by Congress based on findings that reforms to the real estate settlement process were necessary to ensure that consumers were provided with greater information on the settlement process and to protect consumers against unwarranted settlement charges. The law was amended in 1990 to cover persons responsible for servicing federally-related mortgage loans and imposed certain obligations on such servicers.

26. During the Great Recession, Congress passed the Dodd-Frank Wall Street Reform and Consumer Protection Act of 2010 (the ***"Dodd-Frank Act"***) which transferred rulemaking authority under RESPA to the Consumer Financial Protection Bureau (***"CFPB"***). The Dodd-Frank Act also added a section to RESPA giving the CFPB the authority to establish rules on servicers of federally-related mortgage loans for the purpose of carrying out the consumer protection goals of RESPA.

27. In January 2013, the CFPB issued several final rules to address the systemic problems in the mortgage servicing industry described above and to implement protections for borrowers with regard to mortgage servicing and loss mitigation. These rules amended 12 C.F.R. Part 1024, RESPA (Regulation X). The new rules became effective on January 10, 2014.

28. Specifically, the new rules implemented procedural protections for borrowers with regard to the process of obtaining an evaluation for loss mitigation options and restrictions on the foreclosure process while a borrower is being evaluated for a loss mitigation option. See 12 C.F.R. § 1024.41. Servicers are prohibited from instituting foreclosure proceedings until a borrower's mortgage loan is more than 120 days delinquent. Id. at § 1024.41(f)(1). Further, servicers are prohibited from the practice of "dual tracking" which is the practice of initiating foreclosure proceedings while a loss mitigation application is being processed. Id. at § 1024.41(f), (g). Regulation X forbids foreclosure on a borrower's home until the mortgage servicer has *evaluated the borrower for all loss mitigation options*. 12 C.F.R. § 1024.41(c) & (g).

29. If a borrower submits a facially complete loss mitigation application before the servicer has started the foreclosure process, then the servicer is prohibited from taking any action in the foreclosure process until the servicer has sent the borrower the notice required by 12 C.F.R. § 1024.41(c)(1)(ii) and the borrower either did not appeal the notice or the borrower's appeal has been denied. Id. at § 1024.41(f)(2), (g).

**CLASS ACTION COMPLAINT**

30.    RESPA requires servicers to follow strict procedures for processing loss mitigation applications and to disclose certain information to borrowers about the status of their application. See 12 C.F.R. § 1024.41. The rules also afford consumers a private right of action against servicers that fail to comply.

31.    On June 23, 2020, in response to the Covid-19 pandemic, the CFPB issued an Interim Final Rule (IFR) amending Regulation X's Loss Mitigation Procedures to allow mortgage servicers certain exemptions to the strict requirements triggered upon receiving an application for loss mitigation from a borrower. The new "Anti-Evasion Exception" become effective July 1, 2020. 12 C.F.R. § 1024.41(c)(2)(v)(A). This Anti-Evasion Exception offers servicers a temporary exception to the RESPA requirement to "exercise reasonable diligence in obtaining documents and information to complete a loss mitigation application," 12 CFR 1024.41(b)(1).

## CALIFORNIA'S HOMEOWNER BILL OF RIGHTS

32.    In 2012, the California state legislature enacted a series of statutes known as the Homeowner Bill of Rights (***"HBOR"***), effective January 1, 2013, which were meant to ensure fair loan servicing and loss mitigation practices for California homeowners who were in default and facing foreclosure. The laws are designed to guarantee basic fairness and transparency by including restrictions on "dual tracking" (the act of reviewing the borrower for a modification while concurrently processing a foreclosure), requiring the servicer to provide a "single point of contact" for the borrower throughout the entire loss mitigation process until *all foreclosure prevention alternatives have been exhausted*, requiring lenders and servicers to verify foreclosure documents before recording the same, and providing a private right of action to borrowers so they can enforce their HBOR rights. Pursuant to HBOR's private right of action, Plaintiff has standing to bring an action to enforce the provisions found in Cal. Civ. Code §§ 2923.55, 2923.6, 2923.7, 2924.9, 2924.10, 2924.11 and 2924.17. *See* Cal. Civ. Code § 2924.12(a)(1).

**PRELIMINARY ALLEGATIONS - NAMED PLAINTIFF'S FACTS**

33.     Plaintiff took title to the home located at 1224 South California Street, San Gabriel, California (the ***"Property"***) on September 26, 2017 pursuant to that certain Grant Deed recorded in the Official Records of Los Angeles County (the ***"Official Records"***) as document number 20171099001. On April 16, 2019, Plaintiff secured a refinance mortgage (the ***"Loan"***) in the amount of $570,000 from Athas Capital Group, Inc., a California corporation (the ***"Original Lender"***). The Loan was made for Plaintiff's personal, family or household purposes and is a first-lien mortgage secured by Plaintiff's owner-occupied principal residence. The Loan is secured by a deed of trust (the ***"Deed of Trust"***) encumbering the Property which was recorded on April 24, 2019 in the Official Records as document number 20190365154.

34.     The Original Lender transferred all right, title and interest to the Loan and Deed of Trust to RESIDENTIAL MORTGAGE LOAN TRUST I, U.S. BANK NATIONAL ASSOCIATION, NOT IN ITS INDIVIDUAL CAPACITY BUT SOLELY AS LEGAL TITLE TRUSTEE (***"Lender"***) pursuant to that certain Assignment of Deed of Trust recorded in the Official Records on October 28, 2019 as document number 20191154813.

35.     BSI is the current mortgage servicer for the Loan, and Trustee is the current foreclosure trustee for the Loan.

### *Borrower Financial Difficulties and Mortgage Default*

36.     By early 2020, Plaintiff had financial difficulties that were exacerbated by the coronavirus pandemic. Plaintiff's business which provided service-related training and education was closed in accordance with Governor Newsom's public health orders, causing Plaintiff to lose the entire source of her income. Plaintiff was in mortgage default by April 2020.

37.     On September 8, 2020, BSI sent a letter to Plaintiff (the ***"Past Due Letter"***) stating that she was 30 days or more past due. The letter goes on to state

"[i]f you are unable to bring your account current, BSI Financial Services offers loss mitigation options designed to help resolve delinquencies and avoid foreclosure." One of the loss mitigation options listed was the option for a loan modification. The letter instructed Plaintiff to request help by contacting Eric Nguyen at BSI.

38.    On September 10, 2020—just two days after Plaintiff received the Past Due Letter, she emailed Eric Nguyen per the instructions contained in the letter. Plaintiff detailed her loss of income due to the coronavirus pandemic and requested further loss mitigation assistance. Plaintiff did not receive an acknowledgment letter within 5 business days as required by law.

39.    After September 10, 2020, Plaintiff attempted to call BSI on two occasions but was unable to connect with her Single Point of Contact (*"SPOC"*) which she believed was NGUYEN. Further, Plaintiff emailed NGUYEN again with no response.

40.    On October 23, 2020, BSI sent Plaintiff a letter stating that they had contacted her once by mail and three times by phone and incorrectly claiming that "[d]espite these attempts, we have been unable to contact you as of this date." Rather, Plaintiff had requested loss mitigation assistance as set forth in RESPA and HBOR and Defendant had failed to properly acknowledge that request. Further, BSI illegally threatened to commence foreclosure proceedings 30 days after the date set forth in the letter.

### *Plaintiff's Second Plea for Help*

41.    On October 28, 2020—5 days after BSI's letter stating they were unable to contact her, Plaintiff again sent a loss mitigation request letter to BSI this time via certified U.S. mail. Plaintiff noted that she had already contacted BSI four times— twice by email and twice by phone with no response and no acknowledgment letter. In this October 28, 2020 letter, Plaintiff again specifically requested a detailed description of all her available loss mitigation options.

42.     On November 3, 2020, Troy Valentice, AVP for BSI signed and sent Plaintiff a declaration pursuant to HBOR falsely stating that, "[d]espite the exercise of due diligence pursuant to California Civil Code §2923,55(f), the mortgage servicer has been unable to contact the borrower 'to assess the borrower's financial situation and explore options for the borrower to avoid foreclosure'. Thirty (30) days, or more, have passed since these due diligence efforts were satisfied."

43.     In fact, BSI had ignored repeated requests from Plaintiff for an exploration of loss mitigation options and had failed to properly acknowledge Plaintiff's loss mitigation request.

### BSI Records an Illegal Notice of Default

44.     On November 10, 2020, TRUSTEE on behalf of BSI recorded an illegal *Notice of Default and Election to Sell Under Deed of Trust* against Plaintiff's Property which appears in the Official Records as document number 20201424419.

45.     On November 12, 2020, BSI sent Plaintiff a letter which stated "we have an option for you!" The letter indicated that Plaintiff should "put a check by the option(s) [she] would like more information about[.]" Plaintiff checked the box for "Modification" and returned the form to BSI for processing.

### Plaintiff's Third Plea for Help

46.     On November 22, 2020, Plaintiff once again mailed a certified letter to BSI. She again indicated that her inability to keep up with her payments was caused by financial difficulties brought on by the coronavirus pandemic and accompanying economic crisis. She further stated that she had returned the BSI form with the box checked for loan modification. Plaintiff did not receive a response.

### Plaintiff's Fourth Plea for Help and Complete Loss Mitigation Application

47.     On December 13, 2020, Plaintiff mailed another certified letter to BSI. She again explained that the coronavirus pandemic was the cause of her inability to keep up with her payments, and she again indicated her commitment to paying the

past due amount. She repeated her request for assistance, particularly in the form of a loan modification that would reduce her interest rate.

48. On December 13, 2020, Plaintiff submitted a full and complete loss mitigation application (the ***"Application"*** or the ***"Loss Mitigation Application"***) on the form supplied by BSI. Plaintiff's Application included, inter alia, the following:

    a. A fully completed and signed BSI "Loss Mitigation Application" application for mortgage assistance;

    b. A Profit & Loss Statement for Plaintiff's business;

    c. Approval from the Bureau for Private Postsecondary Education for Plaintiff's business;

    d. Plaintiff's driver's license and social security card;

    e. Property tax statement for the Property; and

    f. Plaintiff's mortgage statement;

49. On the BSI form "Loss Mitigation Application" it clearly states:

> "Your Loss Mitigation Application is Complete if You Have:
>
> > Written your loan number at the top of each page
> >
> > Completed Sections A-I
> >
> > Checked to make sure each section is complete and accurate
> >
> > Signed your name(s) in the box above"

50. Plaintiff, in fact, wrote her loan number at the top of each page, completed Sections A-I, checked to make sure each section is complete and accurate and signed her name in the box above. Therefore, Plaintiff's Application was complete when submitted on December 13, 2020.

51. On January 15, 2021, Plaintiff mailed a certified letter to BSI requesting a response to Plaintiff's complete Application.

*BSI Records an Illegal Notice of Sale*

52.   On February 16, 2021, while Plaintiff's complete Loss Mitigation Application was outstanding and unanswered, TRUSTEE and BSI illegally recorded a Notice of Trustee's Sale (the ***"NTS"***) against Plaintiff's Property which appears in the Official Records as document number 20210254889 and which has set a foreclosure auction for March 12, 2021.

53.   Plaintiff is informed and believes and based thereon alleges that BSI and TRUSTEE were prohibited by RESPA and HBOR from recording the NTS while Plaintiff's Loss Mitigation Application was outstanding.

54.   The NTS was recorded in violation of state and federal law and is rendered void. The NTS is invalid, unlawful and must be cancelled and fully rescinded from Plaintiff's Property.

## CLASS ACTION ALLEGATIONS

55.   Plaintiff brings this action on behalf of herself and the members of the following classes (the ***"Classes"*** or as individuals, the ***"class members"***).

56.   Plaintiff brings the first and fourth counts as a class action pursuant to Federal Rule of Civil Procedure 23, on behalf of herself and the following persons who make up the "***Nationwide Class***":

> All homeowners in the United States that submitted a loss mitigation application to BSI within the last three years.

57.   Plaintiff brings the second, fifth, sixth, and seventh counts as a class action pursuant to Federal Rule of Civil Procedure 23, on behalf of themselves and the following persons who make up the "***California Servicer Subclass***":

> All homeowners in the State of California that submitted a loss mitigation application to BSI within the last four years.

**CLASS ACTION COMPLAINT**

58.     Plaintiff brings the third, fifth and seventh counts as a class action pursuant to Federal Rule of Civil Procedure 23, on behalf of themselves and the following persons who make up the "***California Trustee Subclass***":

> All homeowners in the State of California that were subject to a foreclosure filing by Trustee while a complete loss mitigation application was pending within the last four years.

59.     The claims, if certified for class-wide treatment, are pursued on behalf of all similarly situated persons who do not opt-out of the class.

60.     Subject to additional information obtained through further investigation and discovery, the foregoing Classes may be expanded or narrowed by amendment or amended complaint. Specifically excluded from the Classes is any entity in which Defendant had a controlling interest or which has a controlling interest in Defendant, and Defendant's legal representatives, assigns, and successors.

61.     Members of the Classes are so numerous that joinder is impracticable. While the exact number of class members is unknown to Plaintiff, it is believed that the Classes are comprised of at least thousands of members geographically dispersed throughout the United States and the State of California. The Classes, however, are readily identifiable from information and records in the possession of Servicer.

62.     Common questions of law and fact exist as to all members of the Classes. These questions predominate over questions that may affect only individual class members because Defendants have acted on grounds generally applicable to the Classes. Such common legal or factual questions include:

> a.  Whether Servicer violated 12 C.F.R. § 1024.40;
>
> b.  Whether Servicer engaged in a pattern or practice of violating 12 C.F.R. § 1024.40;
>
> c.  Whether Plaintiff and members of the Classes were damaged as a result of Servicer's violations of 12 C.F.R. § 1024.40;

**CLASS ACTION COMPLAINT**

d.  Whether Plaintiff and members of the Classes are entitled to penalties and/or statutory damages as a result of Servicer's violations of 12 C.F.R. § 1024.40;

e.  Whether Servicer violated 12 C.F.R. § 1024.41;

f.  Whether Servicer engaged in a pattern or practice of violating 12 C.F.R. § 1024.41;

g.  Whether Plaintiff and members of the Classes were damaged as a result of Servicer's violations of 12 C.F.R. § 1024.41;

h.  Whether Plaintiff and members of the Classes are entitled to penalties and/or statutory damages as a result of Servicer's violations of 12 C.F.R. § 1024.41;

i.  Whether Defendants violated 15 U.S.C. § 1692e

j.  Whether Defendants engaged in a pattern or practice of violating 15 U.S.C. § 1692e;

k.  Whether Plaintiff and members of the Classes were damaged as a result of Defendants' violations of 15 U.S.C. § 1692e;

l.  Whether Plaintiff and members of the Classes are entitled to penalties and/or statutory damages as a result of Defendants' violations of 15 U.S.C. § 1692e;

m. Whether Defendants violated 15 U.S.C. § 1692f

n.  Whether Defendants engaged in a pattern or practice of violating 15 U.S.C. § 1692f;

o.  Whether Plaintiff and members of the Classes were damaged as a result of Defendants' violations of 15 U.S.C. § 1692f;

p.  Whether Plaintiff and members of the Classes are entitled to penalties and/or statutory damages as a result of Defendants' violations of 15 U.S.C. § 1692f;

q. Whether Defendants violated California's Homeowner Bill of Rights;

r. Whether Plaintiff and members of the Sub Classes were damaged as a result of Defendants' violations of California's Homeowner Bill of Rights;

s. Whether Plaintiff and members of the Classes are entitled to injunctive and/or declaratory relief; and

t. Whether Servicer is required to modify Plaintiff's and the Class members' mortgages.

63. Defendants' defenses to Plaintiff's claims are typical of its defenses to claims of the members of the Classes.

64. Plaintiff's claims are typical of the members of the Classes as all members of the Classes are similarly affected by Defendants' actionable conduct. Plaintiff and all members of the Classes requested loss mitigation assistance and/or submitted loss mitigation applications to Servicer. In addition, Defendants' conduct that gave rise to the claims of Plaintiff and members of the Classes (i.e., violating Regulation X, HBOR and the FDCPA) is the same for all members of the Classes. Plaintiff and all other class members were and are denied their statutory rights and common law protections as a result of Defendants' standard policies and practices.

65. Plaintiff will fairly and adequately protect the interests of the Classes because Plaintiff has no interests antagonistic to, or in conflict with, the Classes that Plaintiff seeks to represent. Furthermore, Plaintiff has retained counsel experienced and competent in the prosecution of complex class action litigation. Plaintiff has or can acquire adequate financial resources to assure that the interests of the Classes will not be harmed.

66. Class action treatment is a superior method for the fair and efficient adjudication of this controversy in that, among other things, such treatment will permit a large number of similarly situated persons or entities to prosecute their

**CLASS ACTION COMPLAINT**

common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of evidence, effort, expense, or the possibility of inconsistent or contradictory judgments that numerous individual actions would engender. The benefits of the class mechanism, including providing injured persons or entities with a method for obtaining redress on claims that might not be practicable to pursue individually, substantially outweigh any difficulties that may arise in the management of this class action.

67. Plaintiff knows of no difficulty to be encountered in the maintenance of this action that would preclude its maintenance as a class action.

68. Plaintiff, and all class members, were injured by Defendants' violations of law as set forth below. As these violations resulted from Defendants' standard and institutionalized practices, questions of law and fact are common to the class.

69. Defendants have acted or refused to act on grounds generally applicable to the Classes, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Classes as a whole.

70. This forum is an appropriate forum for litigation of the claims of the Classes.

## FIRST CAUSE OF ACTION

## VIOLATIONS OF REGULATION X OF RESPA

***(By Plaintiff, on Behalf of the proposed Nationwide Class, Against Defendant Servicer (Including DOES 1-50))***

71. Plaintiff realleges and incorporates by reference all previous paragraphs and allegations above as though fully set forth herein.

72. Servicer is a master servicer (a mortgage loan servicer) within the meaning of 12 C.F.R. § 1024.31.

73. Plaintiff and class members are borrowers of federally-related mortgage loans within the meaning of 12 C.F.R. § 1024.31.

74.     Plaintiff and class members requested loss mitigation assistance from Servicer and submitted loss mitigation applications within the meaning of 12 C.F.R. § 1024.31.

75.     By virtue of the acts described above, Servicer engaged in a pattern and practice of violating and failing to comply with the requirements of Regulation X of RESPA with respect to Plaintiff and class members.

76.     Plaintiff submitted a "complete loss mitigation application" as that phrase is used in Regulation X of RESPA. At the time Plaintiff submitted this application there was no scheduled foreclosure date and, therefore, there were more than 90 days before a foreclosure sale.

77.     Plaintiff's complete loss mitigation application was submitted and remained outstanding prior to the "first notice or filing required by applicable law for any judicial or non-judicial foreclosure process" as that phrase is used in 12 C.F.R. 1024.41(f)(1) ("Prohibition on foreclosure referral").

## **Violations of 12 C.F.R. § 1024.40**

### **(Continuity of Contact)**

78.     Pursuant to 12 C.F.R. § 1024.40, Servicer was required to designate a point of contact (a ***"POC"***) to Plaintiff's and the class members' file within 45 days of the first missed payment and to make such POC available to Plaintiff and the class members via telephone. The POC was required to provide Plaintiff and the class members with accurate information about the loss mitigation options available and the actions required to be evaluated for such loss mitigation. The POC was required to provide Plaintiff and the class members with accurate information about the status of any loss mitigation application that was submitted to the Servicer.

79.     Servicer violated 12 C.F.R. § 1024.40 by failing to assign a POC to Plaintiff within 45 days of Plaintiff's default. Plaintiff is informed and believes and based thereon alleges that the class members experienced the same violations.

**CLASS ACTION COMPLAINT**

80.     Servicer violated 12 C.F.R. § 1024.40 by failing to provide Plaintiff a means of contacting a POC and by failing to require a POC to make timely contact with Plaintiff regarding the status of the Loss Mitigation Application. As alleged herein, Plaintiff attempted to make contact with a POC on numerous occasions and was never able to make direct contact and never received a timely and accurate response from a POC. Rather, Servicer had random employees make contact with Plaintiff and/or had unidentified persons mail notices to Plaintiff regarding the Loss Mitigation Application. Plaintiff is informed and believes and based thereon alleges that the class members experienced the same violations.

81.     Servicer violated 12 C.F.R. § 1024.40 by having random employees contact Plaintiff where such employees were unfamiliar with Plaintiff's Loss Mitigation Application.  Plaintiff was forced to speak with many customer service representatives, none of whom were familiar with the file. As alleged herein, Plaintiff received false, misleading, inaccurate and inconsistent information about the status of the Loss Mitigation Application and what items and documents were required to complete a review of the same. Plaintiff is informed and believes and based thereon alleges that the class members experienced the same violations.

82.     Further, each representative Plaintiff spoke with failed to act as a POC for Plaintiff, either individually or as a team of personnel, because each such representative gave false, misleading, inaccurate, and inconsistent information regarding Plaintiff's Loss Mitigation Application. Servicer violated 12 C.F.R. § 1024.40 by failing to provide Plaintiff with a POC because Servicer's agents and employees, either individually or as an alleged team, failed to comply with any requirement imposed by 12 C.F.R. § 1024.40. Plaintiff is informed and believes and based thereon alleges that the class members experienced the same violations.

## **Violations of 12 C.F.R. § 1024.41(b)(1)**

### **(Reasonable Diligence)**

83.    Pursuant to 12 C.F.R. 1024.41(b)(1), a servicer shall exercise reasonable diligence in obtaining documents and information to complete a loss mitigation application.

84.    Servicer violated 12 C.F.R. § 1024.41(b)(1) and failed to exercise reasonable diligence by not providing Plaintiff with accurate and timely information regarding Plaintiff's Loss Mitigation Application. Plaintiff is informed and believes and based thereon alleges that the class members experienced the same violations.

85.    Servicer violated 12 C.F.R. § 1024.41(b)(1) and failed to exercise reasonable diligence by ignoring Plaintiff's requests for loss mitigation and recording the NOD and NTS. Plaintiff is informed and believes and based thereon alleges that the class members experienced the same violations.

## **Violations of 12 C.F.R. § 1024.41(b)(2)**

### **(Loss Mitigation Review)**

86.    Pursuant to 12 C.F.R. § 1024.41(b)(2), "If a servicer receives a loss mitigation application 45 days or more before a foreclosure sale, a servicer shall:

 a. Promptly upon receipt of a loss mitigation application, review the loss mitigation application to determine if the loss mitigation application is complete; and

 b. Notify the borrower in writing within 5 days (excluding legal public holidays, Saturdays, and Sundays) after receiving the loss mitigation application that the servicer acknowledges receipt of the loss mitigation application and that the servicer has determined that the loss mitigation application is either complete or incomplete. If a loss mitigation application is incomplete, the notice shall state the additional documents and information the borrower must submit to make the loss mitigation application complete and the applicable

**CLASS ACTION COMPLAINT**

date pursuant to paragraph (b)(2)(ii) of this section. The notice to the borrower shall include a statement that the borrower should consider contacting servicers of any other mortgage loans secured by the same property to discuss available loss mitigation options."

87.     Servicer violated 12 C.F.R. § 1024.41(b)(2) by failing to notify Plaintiff, within 5 days after receiving Plaintiff's request for loss mitigation, that Servicer acknowledges receipt of the loss mitigation request. Plaintiff is informed and believes and based thereon alleges that the class members experienced the same violations.

88.     Servicer violated 12 C.F.R. § 1024.41(b)(2) by failing to notify Plaintiff, within 5 days after receiving Plaintiff's Application, that any additional documents or information must be submitted to make the Application complete. Plaintiff is informed and believes and based thereon alleges that the class members experienced the same violations.

89.     Servicer violated 12 C.F.R. § 1024.41(b)(2), by failing to provide Plaintiff with written acknowledgement of receipt of Plaintiff's Application. Plaintiff is informed and believes and based thereon alleges that the class members experienced the same violations.

### Violations of 12 C.F.R. § 1024.41(b)(3)
### (Missing Documents Due Dates)

90.     Servicer violated 12 C.F.R. § 1024.41(b)(3) by repeatedly failing to provide Plaintiff with "a reasonable date by which the borrower should submit the documents and information necessary to make the loss mitigation application complete." Plaintiff is informed and believes and based thereon alleges that the class members experienced the same violations.

**Violation of § 1024.41(c)(1)**

**(Evaluation of Loss Mitigation Applications)**

91.     Pursuant to 12 C.F.R. § 1024.41(c), if a servicer receives a complete loss mitigation application more than 37 days before a foreclosure sale, then, within 30 days of receiving a borrower's complete loss mitigation application, a servicer shall (i) evaluate the borrower for all loss mitigation options available to the borrower and (ii) provide the borrower with a notice in writing stating the servicer's determination of which loss mitigation options, if any, it will offer to the borrower on behalf of the owner or assignee of the mortgage. The servicer shall include in this notice the amount of time the borrower has to accept or reject an offer of a loss mitigation program as provided for in paragraph (e) of this section, if applicable, and a notification, if applicable, that the borrower has the right to appeal the denial of any loan modification option as well as the amount of time the borrower has to file such an appeal and any requirements for making an appeal, as provided for in paragraph (h) of this section.

92.     Servicer violated 12 C.F.R. § 1024.41(c)(1) by failing to (i) evaluate Plaintiff for all available loss mitigation options or (ii) provide Plaintiff with a notice in writing stating Servicer's determination of which loss mitigation options, if any, it will offer to Plaintiff on behalf of the owner or assignee of the mortgage loan within 30 days of receiving Plaintiff's Loss Mitigation Application. Plaintiff is informed and believes and based thereon alleges that the class members experienced the same violations.

**Violation of § 1024.41(c)(2)(iv)**

**(Facially Complete Application)**

93.     Pursuant to 12 C.F.R. § 1024.41(c)(2)(iv), "A loss mitigation application shall be considered facially complete:

a. when a borrower submits all the missing documents and information as stated in the notice required under paragraph (b)(2)(i)(B) of this section,

b. when no additional information is requested in such notice, or

c. once the servicer is required to provide the borrower a written notice pursuant to paragraph (c)(3)(i) (notice of complete application) of this section.

94. Further, "[i]f the servicer later discovers that additional information or corrections to a previously submitted document are required to complete the application, the servicer must promptly request the missing information or corrected documents and _treat the application as complete for the purposes of paragraph (f)(2) and (g)_ of this section until the borrower is given a reasonable opportunity to complete the application." 12 C.F.R. § 1024.41(c)(2)(iv) (emphasis added).

95. Finally, "[i]f a borrower submits all the missing documents and information as stated in the notice required pursuant to § 1026.41(b)(2)(i)(B), or no additional information is requested in such notice, _the application shall be considered facially complete_. … If the borrower completes the application within this period, _the application shall be considered complete as of the date it was facially complete_, for the purposes of paragraphs (d), (e), (f)(2), (g), and (h) of this section…" 12 C.F.R. § 1024.41(c)(2)(iv) (emphasis added).

96. As alleged herein above, Plaintiff submitted a complete Loss Mitigation Application to Servicer. Servicer failed to connect Plaintiff with a POC and failed to identify any missing items or documents in Plaintiff's Loss Mitigation Application.

97. Servicer violation to 12 C.F.R. § 1024.41(c)(2)(iv) by failing to consider and treat Plaintiff's Loss Mitigation Application as "complete" as required by Regulation X. Plaintiff is informed and believes and based thereon alleges that the class members experienced the same violations.

**Violation of 12 C.F.R. 1024.41(c)(3)**

**(Notification of Complete Application)**

98.    Servicer violated 12 C.F.R. § 1024.41(c)(3)(i), by failing to notify Plaintiff (a) that Plaintiff's Loss Mitigation Application was complete; (b) the date the servicer received the complete application; (c) that the servicer expects to complete its evaluation within 30 days of the date it received the complete application; (d) that the borrower is entitled to certain foreclosure protections because the servicer has received the complete application, and, the servicer has not made the first notice or filing required by applicable law for any judicial or non-judicial foreclosure process; (e) that the servicer cannot make the first notice or filing required to commence or initiate the foreclosure process under applicable law before evaluating the borrower's complete application; (f) that the servicer may need additional information at a later date to evaluate the application, in which case the servicer will request that information from the borrower and give the borrower a reasonable opportunity to submit it, the evaluation process may take longer, and the foreclosure protections could end if the servicer does not receive the information as requested; and (g) that the borrower may be entitled to additional protections under State or Federal law, within 5 days (excluding legal public holidays, Saturdays, and Sundays) after receiving Plaintiff's complete loss mitigation application. Plaintiff is informed and believes and based thereon alleges that the class members experienced the same violations.

**Violation of § 1024.41(f)(2)**

**(Prohibition on Foreclosure Referral)**

99.    Pursuant to 12 C.F.R. § 1024.41(f)(2), "If a borrower submits a complete loss mitigation application during the pre-foreclosure review period […] or before a servicer has made the first notice of filing required by applicable law for any judicial or non-judicial foreclosure process, a servicer shall not make the first notice or filing required by applicable law for any judicial or non-judicial foreclosure

process unless: (i) The servicer has sent the borrower a notice pursuant to paragraph (c)(1)(ii) of this section that the borrower is not eligible for any loss mitigation option and the appeal process in paragraph (h) of this section is not applicable, the borrower has not requested an appeal within the applicable time period for requesting an appeal, or the borrower's appeal has been denied"

100.    Plaintiff submitted a compete Loss Mitigation Application. Servicer failed to identify any items that were missing from Plaintiff's Loss Mitigation Application. Plaintiff's Loss Mitigation Application was either complete or facially complete when submitted for purposes of applying protections under 12 C.F.R. § 1024.41(f)(2).

101.    Servicer violated to 12 C.F.R. § 1024.41(f)(2), by recording the NTS. Plaintiff is informed and believes and based thereon alleges that the class members experienced the same violations.

## **Violation of § 1024.41(g)**

### **(Prohibition on Moving for Foreclosure Sale)**

102.    Pursuant to 12 C.F.R. 1024.41(g), if a borrower submits a complete loss mitigation application after a servicer has made the first notice or filing required by applicable law for any judicial or non-judicial foreclosure process but more than 37 days before a foreclosure sale, a servicer shall not move for foreclosure judgment or order of sale, or conduct a foreclosure sale, unless the servicer has sent the borrower a notice pursuant to paragraph (c)(1)(ii) of this section that the borrower is not eligible for any loss mitigation option and the appeal process in paragraph (h) of this section is not applicable, the borrower has not requested an appeal within the applicable time period for requesting an appeal, or the borrower's appeal has been denied.

103.    Servicer violated to 12 C.F.R. § 1024.41(g), by recording the NTS. Plaintiff is informed and believes and based thereon alleges that the class members experienced the same violations.

**CLASS ACTION COMPLAINT**

## **Harm to Plaintiff and The Class Members**

104.   Servicer's violations of Regulation X were prejudicial and harmful to Plaintiff and the class members because those violations:

   a.   deprived Plaintiff and the class members of the rights and protections under RESPA.

   b.   deprived Plaintiff and the class members of a reasonable opportunity to be reviewed and evaluated for all available loss mitigation options.

   c.   deprived Plaintiff and the class members of a reasonable opportunity to be reviewed and evaluated for loan modifications that would cure their mortgage default.

   d.   deprived Plaintiff and the class members of any opportunity to prevent the initiation of the foreclosure proceedings against their home.

   e.   prevented Plaintiff and the class members from reasonably assessing their situation and avoiding foreclosure at pivotal times when such information would have made a difference.

   f.   substantially, unnecessarily and unreasonably delayed the loss mitigation process which exposed Plaintiff and the class members to additional costs and fees and facilitated the commencement of foreclosure proceedings which further escalated the costs and fees charged by the Servicer and its Trustee.

105.   As a result of Servicer's violations of Regulation X, Plaintiff and the class members have suffered actual damages as follows:

   a.   Plaintiff and the class members were unable to secure a mortgage modification, unable to resume making mortgage payments, remained in delinquent status and have been assessed ongoing, unnecessary, and, in some cases, illegal late fees, foreclosure

costs, foreclosure attorney fees and other costs and fees charged
by Servicer and Trustee.

b.     Plaintiff's and the class members' homes were illegally placed
into active foreclosure when Servicer and its Trustee recorded the
Notice of Default. Plaintiff now faces an imminent and unlawful
foreclosure auction, as Servicer and its Trustee have issued a
foreclosure auction date pursuant to the recorded Notice of
Trustee's Sale.

c.     Plaintiff and the class members expended considerable time,
energy, effort and money pursuing the loss mitigation process and
complying with Servicer's demands to produce documents which
Servicer either lost or ignored.

d.     Plaintiff and the class members expended time and money
preparing their financial information for their Loss Mitigation
Application, as well as considerable time and effort preparing,
providing, and vouching for the truth of their financial
information and making repeated copies of documents,
coordinating with their banks for documents, which would have
been minimized or avoided had Servicer complied with
Regulation X. This additional and unnecessary time and effort
spent on the loss mitigation process of many, many months was at
the expense of devoted time and effort to their struggling business
and their ongoing financial and medical issues.

e.     Plaintiff and the class members were forced to incur
administrative costs such as postage, travel expenses,
photocopying, scanning, and facsimile expenses pursuing the loss
mitigation process, which they would not have incurred if
Servicer had complied with Regulation X. Servicer's violations of

Regulation X have unreasonably and improperly increased the time, energy, effort and money required by Plaintiff in pursuing the loss mitigation process.

    f.    Plaintiff has been charged foreclosure related costs and fees by Servicer as a direct result of Servicer's violations of Regulation X.

    g.    Plaintiff has been assessed property inspection fees and other similar default processing costs and fees by Servicer and Trustee as a direct result of Servicer's violations of Regulation X.

    h.    Plaintiff has also suffered emotional damages in the form of fear and anxiety resulting from the continual threat of foreclosure and eviction resulting from Servicer's violations of Regulation X.

    i.    Plaintiff is informed and believes and based thereon alleges that Servicer provided adverse information to consumer reporting agencies and, thereby, Plaintiff has suffered improper credit damage as a direct result of Servicer's violations of Regulation X.

    j.    Plaintiff has expended money in seeking legal redress as well in order to protect her real property rights pursuant to RESPA.

106.    Plaintiff and the class members allege that Servicer's conduct in this case constitutes a willful violation of the applicable provisions of Regulation X of RESPA. As a result of Servicer's actions in violation of RESPA, Servicer is liable to Plaintiff and the class members for actual damages, statutory damages, costs, and attorney's fees.

107.    Whether Plaintiff or the class members have actually paid any such costs or fees which were assessed by Servicer is irrelevant to the damages analysis. Numerous courts have held that assessed fees can constitute damages under RESPA, even if Plaintiff or the class members have not paid them. *See, e.g.*, *Claude v. Wells Fargo Home Mortg.*, No. 3:13-CV-00535, 2014 WL 4073215, at *5 (D. Conn. Aug.

14, 2014) ("the servicer wrongfully imposed late fees"); *Allen v. Bank of Amer. Corp.*, No. CCB-11-33, 2011 WL 3654451, at *5 (D. Md. Aug. 18, 2011) (plaintiffs stated claim under RESPA for improper "imposition" of late fees).

## SECOND CAUSE OF ACTION

## VIOLATIONS OF CALIFORNIA'S HOMEOWNER BILL OF RIGHTS (SERVICER)

### *(By Plaintiff, on behalf of the proposed California Servicer Class, Against Defendant Servicer (Including DOES 1-50))*

108. Plaintiff realleges and incorporates by reference all previous paragraphs and allegations above as though fully set forth herein.

109. At a time when no foreclosure auction had been scheduled, Plaintiff requested a loan modification under California's Homeowner Bill of Rights (*"HBOR"*) by delivering a full and complete loan modification application to Servicer which contained all of the information required by Servicer in order to make a final decision on Plaintiff's loan modification application. Plaintiff is informed and believes and based thereon alleges that the class members submitted the same request to Servicer.

## Violation of § 2923.6

110. Servicer violated Cal. Civ. Code § 2923.6 by recording the NTS while Plaintiff's first lien loan modification application was pending. Plaintiff is informed and believes and based thereon alleges that the class members experienced the same violations.

111. Based upon these material violations of Cal. Civ. Code § 2923.6, Plaintiff and class members are entitled to an injunction under Cal. Civ. Code § 2924.12 stopping any further foreclosure action against their properties and an award for attorney's fees and costs. Plaintiff and the class members further allege that Defendants' violation of these provisions of the HBOR was knowing, malicious, willful and reckless.

### Violation of § 2923.7

112.    HBOR specifically requires that upon a request for a "foreclosure prevention alternative, the mortgage servicer shall promptly establish a single point of contact and provide to the borrower one or more direct means of communicating with the single point of contact" and that "[t]he single point of contact shall remain assigned to the borrower's account until the mortgage servicer determines that all loss mitigation options offered by, or through, the mortgage servicer have been exhausted or the borrower's account becomes current." Cal. Civ. Code § 2923.7.

113.    As alleged herein above, Plaintiff requested a foreclosure prevention alternative from Servicer and was entitled to appointment of Single Point of Contact (a "***SPOC***"). Plaintiff is informed and believes and based thereon alleges that the class members submitted similar requests to Servicer.

114.    Servicer failed to promptly establish a single point of contact for Plaintiff. Plaintiff is informed and believes and based thereon alleges that the class members experienced the same violations. Rather, immediately upon Plaintiff request for a foreclosure prevention alternative, Servicer began shunting Plaintiff among various employees who gave inconsistent, conflicting and erroneous information.

115.    Servicer violated Cal. Civ. Code § 2923.7(a), by failing to provide Plaintiff and the class members one or more direct means of communicating with a SPOC.

116.    Servicer violated Cal. Civ. Code § 2923.7(c), by failing keep a SPOC assigned to the Plaintiff's account until the mortgage servicer determines that all loss mitigation options offered by, or through, the mortgage servicer have been exhausted or Plaintiff's account becomes current. Plaintiff is informed and believes and based thereon alleges that the class members experienced the same violations.

117.    Servicer violated Cal. Civ. Code § 2923.7(b), by assigning individuals to Plaintiff's and the class members' loss mitigation requests who:

     a.  Failed to communicate the process by which Plaintiff may apply for an available foreclosure prevention alternative and the deadline for any required submissions to be considered for these options.

     b.  Failed to coordinate receipt of all documents associated with available foreclosure prevention alternatives and notify Plaintiff of any missing documents necessary to complete the application.

     c.  Failed to have access to current information and personnel sufficient to timely, accurately, and adequately inform Plaintiff of the current status of the foreclosure prevention alternative.

     d.  Failed to ensure that Plaintiff was considered for all foreclosure prevention alternatives offered by, or through, the mortgage servicer, if any.

     e.  Failed to have access to individuals with the ability and authority to stop foreclosure proceedings when necessary.

Plaintiff is informed and believes and based thereon alleges that the class members experienced the same violations.

118.   As a result of Servicer's violations of § 2923.7 alleged above, Plaintiff and the class members were illegally dual tracked which resulted in illegal commencement of foreclosure actions along with illegal notices of default and notices of trustee's sales to be filed.

119.   Further, Servicer's violations of § 2923.7 resulted in significant costs and fees charged to Plaintiff's and the class members' mortgages, including, without limitation, late fees, foreclosure filing fees, inspection fees, and foreclosure attorney and trustee fees.

120.   Further, Servicer's violations of § 2923.7 resulted in Plaintiff and the class members incurring additional out-of-pocket costs for responding to the erroneous demands from Servicer's employees, including, without limitation,

printing, scanning, faxing, mailing and travel costs associated with redundant and unnecessary document production.

121.    Based upon these material violations of Cal. Civ. Code § 2923.7, Plaintiff and class members are entitled to an injunction under Cal. Civ. Code § 2924.12 stopping any further foreclosure action against their properties and an award for attorney's fees and costs. Plaintiff and the class members further allege that Defendants' violation of these provisions of the HBOR was knowing, malicious, willful and reckless.

## **Violation of § 2924.10**

122.    Servicer violated Cal. Civ. Code § 2924.10 by failing to provide a timely written acknowledgment of the receipt of Plaintiff's Loss Mitigation Application. Plaintiff is informed and believes and based thereon alleges that the class members experienced the same violations.

123.    Servicer violated Cal. Civ. Code § 2924.10 by delivering a correspondence in response to Plaintiff's loss mitigation requests which failed to include the following information:

   a. A description of the loan modification process, including an estimate of when a decision on the loan modification will be made after a complete application has been submitted by the borrower and the length of time the borrower will have to consider an offer of a loan modification or other foreclosure prevention alternative.

   b. Any deadlines, including deadlines to submit missing documentation, that would affect the processing of a first lien loan modification application.

   c. Any expiration dates for submitted documents.

   d. Any deficiency in the borrower's first lien loan modification application.

Plaintiff is informed and believes and based thereon alleges that the class members experienced the same violations.

124. Based upon these material violations of Cal. Civ. Code § 2924.10, Plaintiff and class members are entitled to an injunction under Cal. Civ. Code § 2924.12 stopping any further foreclosure action against their properties and an award for attorney's fees and costs. Plaintiff and the class members further allege that Defendants' violation of these provisions of the HBOR was knowing, malicious, willful and reckless.

## **Violation of § 2924.17**

125. Section 2924.17 of HBOR requires that any notice of default, notice of sale, assignment of a deed of trust, or substitution of trustee recorded by or on behalf of a mortgage servicer in connection with a foreclosure subject to the requirements of Section 2924, or a declaration or affidavit filed in any court relative to a foreclosure proceeding be accurate and complete and supported by competent and reliable evidence.

126. Servicer had no legal right to record the NTS or set a foreclosure sale date on the Property as the same were prohibited by law.

127. Servicer violated Section 2924.17 of HBOR by failing to review competent and reliable evidence prior to recording the NTS and setting a foreclosure sale date.

128. Servicer violated Section 2924.17 of HBOR by recording an inaccurate NTS.

129. Plaintiff is informed and believes and based thereon alleges that the class members experienced the same violations.

130. Based upon these material violations of Cal. Civ. Code § 2924.17, Plaintiff and class members are entitled to an injunction under Cal. Civ. Code § 2924.12 stopping any further foreclosure action against the Property, a rescission of the Notice of Default, and an award for attorney's fees and costs. Plaintiff and the

**CLASS ACTION COMPLAINT**

class members further allege that Defendants' violation of these provisions of the HBOR was knowing, malicious, willful and reckless.

## THIRD CAUSE OF ACTION

## VIOLATIONS OF CALIFORNIA'S HOMEOWNER BILL OF RIGHTS (TRUSTEE)

### *(By Plaintiff, on behalf of the proposed California Trustee Class Against Defendant Trustee (Including DOES 1-50))*

131.    Plaintiff realleges and incorporates by reference all previous paragraphs and allegations above as though fully set forth herein.

132.    At a time when no foreclosure auction had been scheduled, Plaintiff requested a loan modification under California's Homeowner Bill of Rights (*"HBOR"*) by delivering a full and complete loan modification application to Servicer which contained all of the information required by Servicer in order to make a final decision on Plaintiff's loan modification application. Trustee had knowledge that Plaintiff submitted a complete loss mitigation application to Servicer. Plaintiff is informed and believes and based thereon alleges that the class members submitted a complete loan modification application to Servicer and that Trustee had knowledge of such submissions.

### Violation of § 2923.6

133.    Trustee violated Cal. Civ. Code § 2923.6 by recording the NTS while Plaintiff's first lien loan modification application was pending. Plaintiff is informed and believes and based thereon alleges that the class members experienced the same violations.

134.    Based upon these material violations of Cal. Civ. Code § 2923.6, Plaintiff and the class members are entitled to (a) an injunction under Cal. Civ. Code § 2924.12 stopping any further foreclosure action against their properties until such time that the violations of law are cured by rescission of the void notice of default and/or notices of trustee's sale and (b) an award for attorney's fees and costs.

Plaintiff and the class members further allege that Defendants' violation of these provisions of the HBOR was knowing, malicious, willful and reckless.

### Violation of § 2924.17

135.    Section 2924.17 of HBOR requires that any notice of default, notice of sale, assignment of a deed of trust, or substitution of trustee recorded by or on behalf of a mortgage servicer in connection with a foreclosure subject to the requirements of Section 2924, or a declaration or affidavit filed in any court relative to a foreclosure proceeding be accurate and complete and supported by competent and reliable evidence.

136.    Trustee had no legal right to record the NTS or set a foreclosure sale date on the Property as the same were prohibited by law. Plaintiff is informed and believes and based thereon alleges that the class members experienced the same violations.

137.    Trustee violated Section 2924.17 of HBOR by failing to review competent and reliable evidence prior to recording the NTS and setting a foreclosure sale date. Plaintiff is informed and believes and based thereon alleges that the class members experienced the same violations.

138.    Trustee violated Section 2924.17 of HBOR by recording an inaccurate NTS. Plaintiff is informed and believes and based thereon alleges that the class members experienced the same violations.

139.    Based upon these material violations of Cal. Civ. Code § 2924.17, Plaintiff and the class members are entitled to (a) an injunction under Cal. Civ. Code § 2924.12 stopping any further foreclosure action against their properties until such time that the violations of law are cured by rescission of the void notice of default and/or notices of trustee's sale and (b) an award for attorney's fees and costs. Plaintiff and the class members further allege that Defendants' violation of these provisions of the HBOR was knowing, malicious, willful and reckless.

**CLASS ACTION COMPLAINT**

## FOURTH CAUSE OF ACTION

## VIOLATIONS OF THE FEDERAL FAIR DEBT COLLECTION PRACTICES ACT

### *(By Plaintiff, on behalf of the proposed Nationwide Class Against Defendant Servicer (Including DOES 1-50))*

140.    Plaintiff realleges and incorporates by reference all previous paragraphs and allegations above as though fully set forth herein.

141.    The Federal Fair Debt Collection Practices Act (***"FDCPA"***), 15 U.S.C. §§ 1692 *et. seq.*, prohibits the use of false, deceptive, misleading, harassing, abusive and offensive conduct by debt collectors during collection of consumer debts.

142.    Plaintiff and the class members are natural persons and "consumers" as defined under 15 U.S.C. § 1692a(3).

143.    The obligation between the parties is a "debt" owed as defined under 15 U.S.C. § 1692a(5) pursuant to the subject note and deed of trust.

144.    Servicer is a "debt collector" as defined under 15 U.S.C. § 1692a(6), as Servicer regularly attempts to collect debts owed to others through its mortgage servicing division.

145.    Servicer has engaged in acts or omissions prohibited by the FDCPA.

146.    A claim under the FDCPA is evaluated from the perspective of the least sophisticated consumer regardless of whether the consumer is represented by counsel.

### Violations of 15 U.S.C. § 1692e

147.    Pursuant to 15 U.S.C. § 1692e, a debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. This prohibition includes any false representations about "the character, amount, or legal status of any debt" along with any representation or implication that nonpayment of any debt will result in sale of any property of any person unless such action is lawful.

1

## Illegal NTS– Illegal Threat of Foreclosure

2      148.    Pursuant to HBOR and RESPA, Servicer was prohibited from issuing

3   and recording the Notice of Trustee's Sale and scheduling a foreclosure sale against

4   Plaintiff's Property.

5      149.    Servicer is using the illegal threat of foreclosure to continue its debt

6   collection against Plaintiff. Plaintiff is informed and believes and based thereon

7   alleges that the class members experienced the same violations.

8      150.    Servicer violated 15 U.S.C. § 1692e(5), by threatening to take legal

9   action (setting a foreclosure sale date and continuing the foreclosure process) which

10  Servicer knew was prohibited by state and federal law. Plaintiff is informed and

11  believes and based thereon alleges that the class members experienced the same

12  violations.

13     151.    Servicer violated 15 U.S.C. § 1692e(8), by communicating credit

14  information to the Trustee and to the public regarding the Notice of Trustee's Sale

15  (the purported right to foreclose on the defaulted debt) which Servicer knew or

16  should have known to be false as that action is prohibited by state and federal law.

17  Plaintiff is informed and believes and based thereon alleges that the class members

18  experienced the same violations.

19

## Violations of 15 U.S.C. § 1692f

20     152.    Pursuant to 15 U.S.C. § 1692f, a debt collector may not use "unfair or

21  unconscionable means to collect or attempt to collect any debt."

22     153.    Servicer violated 15 U.S.C. § 1692f by the following actions:

23          a.  Charging and collecting foreclosure filing fees, foreclosure attorney

24              fees and foreclosure recording fees for the illegal notices of default

25              and notices of trustee's sale.

26          b.  Charging and collecting property inspection and valuation fees.

27

28

c. Taking nonjudicial action by recording illegal foreclosure documents such as the NOD and NTS to effect dispossession of Plaintiff's Property and the class members properties without the legal right.

d. Repeatedly threatening, in various letters and notifications, to take nonjudicial action to effect dispossession of Plaintiff's and the class members' properties at times and under circumstances which were and are prohibited by state and federal law.

e. Sending collection letters which had false, misleading and deceptive language regarding Plaintiff's right to a loss mitigation review and delaying the loss mitigation process in order to charge and collect additional costs and fees.

f. Refusing to provide Plaintiff and the class members with a single point of contact and allowing various employees to provide Plaintiff and the class members with contradictory and false information during the loss mitigation process.

Plaintiff is informed and believes and based thereon alleges that the class members experienced the same violations.

154.    As a result of the foregoing violations, Servicer is liable for statutory damages, in an amount to be determined at trial, but not less than $1,000 per violation, pursuant to 15 USC § 1692k(a)(2)(A) or, in the case of a class action, (i) such amount for each named plaintiff as could be recovered under subparagraph (A), and (ii) such amount as the court may allow for all other class members, without regard to a minimum individual recovery, not to exceed the lesser of $500,000 or 1 per centum of the net worth of the debt collector; and in the case of any successful action to enforce the foregoing liability, the costs of the action, together with a reasonable attorney's fee as determined by the court.

155.    Plaintiff and the class members have suffered actual damages as the proximate and actual cause and result of the violations of the FDCPA by Servicer to be determined at trial.

156.    As a result of the foregoing violations, Servicer should be enjoined from employing any of the unlawful conduct, methods, acts, or practices under the FDCPA alleged herein or proven at trial.

157.    As a result of Servicer's violations of the FDCPA, Plaintiff and the class members are entitled to actual and statutory damages, attorney's fees, and costs, and any other relief the Court deems just and proper.

## FIFTH CAUSE OF ACTION

## VIOLATIONS OF THE CALIFORNIA ROSENTHAL ACT

### (By Plaintiff, on behalf of the proposed California Servicer Class & California Trustee Class, Against All Defendants (Including DOES 1-50))

158.    Plaintiff realleges and incorporates by reference all previous paragraphs and allegations above as though fully set forth herein.

159.    As alleged herein, and as set forth in detail above, Defendants have committed violations of the Rosenthal Fair Debt Collection Practices Act, California Civil Code § 1788, et seq. (*"Rosenthal Act"*), which incorporates by reference, and requires compliance with, the provisions of the federal Fair Debt Collection Practices Act, 15 U.S.C. § 1692, et seq. The FDCPA and, therefore, the Rosenthal Act, prohibits a debt collector from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692(e).

160.    Defendants are "debt collectors" within the meaning of California Civil Code § 1788.2(c) because Defendants conducted debt collection activities on Plaintiff's and the class members' "consumer debt." Plaintiff and the class members are entitled to the protections of Cal. Civ. Code §§ 1788 et seq. with respect to Defendants' collection activities related to the Loan.

**CLASS ACTION COMPLAINT**

161.    Defendants, through their agents, engaged in unfair and deceptive collection practices in contravention of the Rosenthal Act. Defendants' actions alleged herein constitute violations by Defendants of Cal. Civ. Code § 1788.17.

162.    Plaintiff and the class members have suffered actual damages as the proximate and actual cause and result of the violations of the Rosenthal Act by Defendants to be determined at trial.

163.    As a proximate result of Defendants' violations of the Rosenthal Act, Defendants are liable for actual and statutory damages, including general damages and special damages, attorney's fees, and costs, and any other such relief the Court deems just and proper and in amounts to be determined at trial pursuant to Cal. Civ. Code §§ 1788.17 and 1788.30(a).

164.    Additionally, because Defendants' violations of the Rosenthal Act were committed willingly and knowingly, Plaintiff and the class members are entitled to recover penalties of up to $1,000 per violation as provided for in the Rosenthal Act.

165.    As a result of the foregoing violations, Defendants should be enjoined from employing any of the unlawful conduct, methods, acts, or practices under the Rosenthal Act alleged herein or proven at trial.

## SIXTH CAUSE OF ACTION

## NEGLIGENT LOAN SERVICING

### (By Plaintiff, on behalf of the proposed California Servicer Class Against Defendant Servicer (Including DOES 1-50))

166.    Plaintiff realleges and incorporates by reference all previous paragraphs and allegations above as though fully set forth herein.

167.    Servicer owed a duty of due care to Plaintiff and the class members in servicing the Loan and reviewing Plaintiff's and the class members' loss mitigation applications.

168.    Given the servicer-borrower relationship that existed between Servicer, on the one hand, and Plaintiff and the class members, on the other hand, Servicer had

a duty to properly process the loan modification applications, as well as provide proper notice of any rejection and appeal period as to the loss mitigation options and comply with all state and federal foreclosure laws, rules and regulations rather than simply proceeding with foreclosure when a loan modification and other workout options are being evaluated and processed (dual tracking).

169.    Servicer breached its duty of due care owed to Plaintiff and the class members by the actions alleged herein including, without limitation, the following:

  a. Failing to send proper and accurate acknowledgment letters for documents received from Plaintiff and the class members;

  b. Failing to properly safeguard and account for documents received from Plaintiff and the class members;

  c. Failing to assign (and keep assigned) a competent single point of contact who complied with state and federal law;

  d. Failing to "exercise reasonable diligence in obtaining documents and information to complete a loss mitigation application." 12 C.F.R. § 1024.41(b)(1);

  e. Failing to identify all items needed to complete and finalize the loss mitigation applications;

  f. Failing to properly process the loss mitigation applications;

  g. Failing to properly communicate any issues or deficiencies with said applications;

  h. Issuing and recording illegal notices of default; and

  i. Issuing and recording illegal notices of trustee's sale.

170.    Servicer's breach of its duty of due care is a direct cause of damage to Plaintiff and the class members in amounts to be determined at trial.

171.    Servicer is not acting in a role as a "lender of money" but rather a business that has an obligation to truthfully and properly deal with their clients, follow all applicable state and federal laws, and keep the customer updated as to the

current status of their contractual relationship. Servicer failed across the board in this regard and as such has negligently performed their duty, breached several state and federal laws, thus harming Plaintiff and the class members.

172. Servicer's breach was the actual and proximate cause of the foreclosure proceedings against the subject properties including Plaintiff's Property, as well as depriving Plaintiff and the class members a meaningful opportunity to secure available loss mitigation and prevent commencement of foreclosure against their properties.

173. Plaintiff and the class members have been injured in that the foreclosure process was unlawfully initiated against their homes and Plaintiff is now subject to imminent foreclosure; Plaintiff and the class members expended considerable time, energy, and effort in preparing their financial information for their loss mitigation application, as well as considerable time and effort preparing, providing, and vouching for the truth of their financial information; Plaintiff's and the class members' credit was severely damaged; thousands of dollars in foreclosure attorney's fees, excess interest, late fees, foreclosure fees, and other improper amounts were added to Plaintiff's Loan balance and arrears that keep increasing due to Servicer's misconduct; Plaintiff and the class members have expended additional amounts, according to proof at the time of trial, all in excess of the jurisdictional minimum of this Court.

## SEVENTH CAUSE OF ACTION

## UNFAIR PRACTICES UNDER CALIFORNIA BUSINESS & PROFESSIONS CODE SECTION 17200, ET SEQ.

***(By Plaintiff, on behalf of the proposed California Servicer Class & California Trustee Class Against All Defendants (Including DOES 1-50))***

174. Plaintiff realleges and incorporates by reference all previous paragraphs and allegations above as though fully set forth herein.

**CLASS ACTION COMPLAINT**

175.    The UCL defines unfair business competition to include any "unlawful, unfair or fraudulent" act or practice, as well as any "unfair, deceptive, untrue or misleading" advertising.

176.    A business practice is "unlawful" if it violates any established state or federal law.

177.    Defendants engaged in unfair acts in violation of Business and Professions Code section 17200 by the following conduct:

- Defendants failed to comply with California law and specifically committed illegal dual tracking on Plaintiff's Property and the homes of the class members.

- Defendants failed to comply with federal law under Regulation X of RESPA and specifically committed illegal dual tracking on Plaintiff's Property and the homes of the class members.

- Defendants illegally threatened foreclosure on Plaintiff's Property and the homes of the class members in violation of HBOR and RESPA.

- Defendants failed to provide, and keep assigned, a proper point of contact as required by HBOR and RESPA.

- Defendants misled Plaintiff and the class members into believing that Servicer intended to comply with state and federal law but, in fact, Servicer continued to dual-track Plaintiff and the class members into foreclosure.

- Defendants illegally recorded notices of default against Plaintiff's and the class members' properties in violation of RESPA and HBOR.

- Defendants illegally recorded notices of trustee's sale against Plaintiff's and class members' properties in violation of RESPA and HBOR.

**CLASS ACTION COMPLAINT**

- Defendants failed to acknowledge receipt of Plaintiff's complete loss mitigation application in violation of RESPA and HBOR. Plaintiff is informed and believes and based thereon alleges that the class members experienced the same violations.

- Defendants failed to properly identify any purported missing documents in Plaintiff's and the class members' loss mitigation applications in violation of RESPA and HBOR.

- Defendants failed to provide a Single Point of Contact with the power to postpone the trustee's sale in violation of Civil Code § 2923.7.

- Defendants "dual tracked" Plaintiff and class members into foreclosure while their complete loss mitigation applications remained pending in violation of RESPA and HBOR.

178.    Defendants' acts, omissions, misrepresentations, customs, practices and non-disclosures as set forth in this Complaint, whether or not in violation of any law, are otherwise unfair, unconscionable, unlawful and fraudulent.

179.    Plaintiff and the class members have been injured and harmed directly by the acts of Defendants, and each of them, committed in violation of Business and Professions Code Section 17200. As a result, Plaintiff and the class members have suffered actual harm and damage.

180.    Plaintiff and the class members have and will in the future, incur expenses and costs which Plaintiff and the class members are entitled to recover. Plaintiff and the class members are therefore entitled to injunctive relief and attorney's fees as available under California Business and Professions Code § 17200 and related sections. These acts and practices, as described in the previous paragraphs, are unfair and violate Business and Professions Code § 17200 because their policies and practices described above violate all the statutes previously listed,

and consequently, constitute an unlawful business act of practice within the meaning of Business and Professions Code §17200.

181.    Defendants' conduct in dual tracking Plaintiff and the class members into foreclosure without legal justification, with knowledge of said wrongful acts, and engaging in the misrepresentations, deceits, and/or concealments of material facts as herein alleged was done with the intention of thereby depriving Plaintiff and the class members of property or legal rights and was despicable conduct that subjected Plaintiff and the class members to unjust hardship in conscious disregard of Plaintiff's and the class members' rights. Such conduct was willful, oppressive, fraudulent, and malicious in that Defendants, and each of them, acted and/or failed to act with the intent to injure Plaintiff and the class members and/or in conscious disregard of their rights. Plaintiff and the class members are therefore entitled to punitive damages.

## **EIGHTH CAUSE OF ACTION**
## **DECLARATORY RELIEF**
### ***(By Plaintiff, as an Individual, Against All Defendants (Including DOES 1-50))***

182.    Plaintiff realleges and incorporates by reference all previous paragraphs and allegations above as though fully set forth herein.

183.    A dispute has arisen and a controversy exists between Plaintiff and Defendants relating to the validity of the pending foreclosure proceedings, in that Plaintiff claims the pending foreclosure proceedings are invalid and unlawful and any resulting trustee's sale void whereas Defendants claim those proceedings are lawful and that Lender/Servicer and Trustee are entitled to exercise the power of sale under the Deed of Trust.

184.    Plaintiff therefore seeks a judicial declaration that the Notice of Default, Notice of Trustee's Sale and pending foreclosure proceedings by Defendants against the Property are ***void and of no effect and must be cancelled or withdrawn*** because (a) the Notice of Default and Notice of Trustee's Sale were filed in violation of Civil

Code § 2923.6 and Regulation X, once Defendants comply with those sections, a new notice of default must be recorded in order to re-commence the foreclosure process under Civil Code § 2924, *et seq.*; (b) Defendants were not legally entitled to record the Notice of Default and Notice of Trustee's Sale; and (c) Defendants are in violation of the Homeowner Bill of Rights and Regulation X and cannot proceed with any foreclosure activities, including a trustee's sale of the Property, until a written determination is made on Plaintiff's first lien loan modification application under HBOR and RESPA, and until Defendants have fully and completely complied with all the applicable provisions of the HBOR and RESPA as set forth in this Complaint.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff and the class members pray for judgment as follows:

1.    For an order certifying the proposed class(es);

2.    For an injunction prohibiting the Defendants from concluding any trustee's sale of the Property or issuing or recording any trustee's deed upon sale resulting from any such trustee's sale of the Property;

3.    For such other and further injunctive relief as is necessary to stop further dual tracking against the Plaintiff's and the class members' homes;

4.    For a declaration that (a) the Notice of Default, Notice of Trustee's Sale and pending foreclosure proceedings by Defendants against the Property, and any Trustee's Deed pursuant thereto, are void and of no effect; (b) that the Notice of Default and Notice of Trustee's Sale be immediately cancelled by the County Recorder, and (c) that Defendants cannot proceed with any foreclosure activities, including a trustee's sale of the Property, until Defendants fully and completely comply with Regulation X and HBOR;

5.    For Actual damages according to proof;

6.    For General damages according to proof;

7.    For Special and Punitive damages according to proof;

8.     For Statutory damages as permitted by law;

9.     For double or treble damages as permitted by law;

10.    For costs of suit incurred herein;

11.    For attorneys' fees incurred herein as permitted by law; and

12.    For such other and further relief as the Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff demands trial by jury of all claims so triable as a matter of right.

Dated: March 8, 2021                           SULLIVAN & YAECKEL LAW GROUP, APC


                                               /s/ Eric K. Yaeckel_____
                                               Eric K. Yaeckel
                                               Attorneys for Plaintiff ALICE HSU,
                                               individually and on behalf of other members
                                               of the public similarly situated

**CLASS ACTION COMPLAINT**